## IN MONTGOMERY COUNTY CIRCUIT COURT, MARYLAND

-------------------------------------------------------------x

MICHAEL U. ALVAREZ, PETER J. KEEL,
and CHARLES P. SPILIOTIS,

        Plaintiffs.

v.

TERRAFORM POWER, LLC, and
TERRAFORM POWER, INC.

        Defendants.

-------------------------------------------------------------x

**COMPLAINT**

FILED
CLERK OF COURT
CLERK'S OFFICE
MONTGOMERY CO., MD.
2019 MAY 15  PM 3: 56

Plaintiffs Michael U. Alvarez, Peter J. Keel, and Charles P. Spiliotis (collectively, "Plaintiffs"), by and through their undersigned counsel, Morgan, Lewis & Bockius LLP, as and for their complaint against Defendants TerraForm Power, LLC and TerraForm Power, Inc. (together, "Defendants"), allege as follows.

### SUMMARY OF CLAIMS

1.    On January 29, 2015, SunEdison Inc. ("SunEdison") and certain of its affiliates, including Defendants (SunEdison and such affiliates collectively, "SUNE"), acquired FirstWind Energy, LLC ("First Wind"), as well as the services of certain First Wind executives, including Plaintiffs, pursuant to a group of interrelated contracts described below (the "Governing Documents"). On or about April 16, 2016, Plaintiffs resigned from their positions with SUNE for "Good Reason," as that term is defined in the Governing Documents. Pursuant to the Governing Documents, Plaintiffs became entitled to a series of benefits upon their resignations. Among these benefits was the immediate vesting of Restricted Stock Units ("RSUs") for SunEdison Class A Common Stock and TerraForm Power, Inc. Class A Common Stock that had been awarded to

Plaintiffs during their time of employment. Pursuant to the Governing Documents, Defendants were obligated to deliver to Plaintiffs' securities accounts the number of shares of TerraForm Power, Inc. Class A Common Stock that corresponded to each Plaintiff's vested RSUs within thirty days after their resignations. Defendants failed to deliver any stock to any Plaintiff by May 16, 2016 or at any time thereafter. Plaintiffs bring this suit to recover from Defendants the market value, as of May 16, 2016, of the stock that Defendants failed to deliver to them.

## JURISDICTION AND VENUE

2.     Jurisdiction is vested in this Court over TerraForm Power, LLC pursuant to Md. Code Ann., Courts and Judicial Proceedings § 1-501 and § 6-102 because TerraForm Power, LLC is domiciled in Maryland.

3.     Jurisdiction is vested in this Court over TerraForm Power, Inc. pursuant to Md. Code Ann., Courts and Judicial Proceedings § 1-501 and §6-103 based upon TerraForm Power, Inc.'s transaction of business in the State of Maryland and its execution of a contract containing a provision (as set forth more fully below) wherein Defendants consented to litigate any contractual disputes in Montgomery County, Maryland.

4.     Venue is proper in this Court pursuant to Md. Code Ann., Courts and Judicial Proceedings § 6-201(a) because TerraForm Power, LLC maintains its principal offices in Montgomery County, Maryland and because both Defendants carry on regular business in this county.

## PARTIES

5.     Plaintiff Michael U. Alvarez is an individual and a citizen of California.

6.     Plaintiff Peter J. Keel is an individual and a citizen of Massachusetts.

7.     Plaintiff Charles P. Spiliotis is an individual and a citizen of California.

8.      Defendant TerraForm Power, LLC ("TerraForm LLC") is a corporation organized under the laws of Delaware, with its last known principal place of business at 7550 Wisconsin Avenue, 9th Floor, Bethesda, Maryland 20814.

9.      Defendant TerraForm Power Inc. ("TerraForm Inc.") is a corporation organized under the laws of Delaware, with its principal place of business located at 200 Liberty Street, 14th Floor, New York, New York 10281.  On information and belief, TerraForm Inc. is the managing member of, and controls the business affairs and operations of, TerraForm LLC.

10.     Nonparty SunEdison Inc. was a corporation organized under the laws of Delaware, with its principal place of business located at 13736 Riverport Drive, Maryland Heights, Missouri 63043, which is being liquidated pursuant to a chapter 11 bankruptcy plan confirmed by the Bankruptcy Court for the Southern District of New York on or about July 25, 2017.  At all times relevant to the allegations in this Complaint, SunEdison Inc. held a majority equity interest in TerraForm Inc.

## FACTS

### The Governing Documents

11.     SUNE and TerraForm LLC acquired certain operating wind and solar project entities, including First Wind, as well as the services of certain First Wind executives, including Plaintiffs (the "Acquisition"), pursuant to a certain Purchase and Sale Agreement, dated November 17, 2014 (including its appendices and other attachments, the "PSA").

12.     The Acquisition closed on or about January 29, 2015.

13.     When the Acquisition closed, Plaintiffs became employees of SUNE and acquired numerous protections and privileges pursuant to the Governing Documents, which included, to the extent relevant to this action:  (i) the PSA; (ii) the SunEdison Senior Management Incentive Plan for Calendar Years 2015 to 2017 (as amended, the "SMIP"), which is governed by New York law;

and (iii) certain Award Agreements to be issued by TerraForm Inc. to each Plaintiff over time (the "Award Agreements"), which set forth the terms of restricted stock units related to TerraForm Inc. Class A Common Stock granted to each Participant (defined below) and the delivery of shares of such stock in certain circumstances, and which are governed by Delaware law and name Maryland as the exclusive jurisdiction for resolution of disputes thereunder.

14.     From the Acquisition until his resignation for Good Reason, Plaintiff Alvarez served as the Executive Vice-President for Global Engineering, Procurement and Construction and Global Asset Management for SUNE.

15.     From the Acquisition until his resignation for Good Reason, Plaintiff Keel served as Chief Financial Officer and General Manager for Global Development for SUNE.

16.     From the Acquisition until his resignation for Good Reason, Plaintiff Spiliotis served as Vice President, Strategy and M&A for SUNE.

17.     Although Plaintiffs were employed by SunEdison's subsidiary NVT, LLC, SunEdison and Defendants had several contractual obligations to Plaintiffs related to their employment under the Governing Documents.

18.     Plaintiffs' benefits under the PSA included, among other things, annual performance-based bonuses and, in certain circumstances, severance benefits and payments.

19.     In connection with the PSA, SunEdison agreed to adopt the SMIP, a senior management incentive plan for the benefit of certain participants (the "Participants"), including Plaintiffs, for the years 2015 through 2017. PSA, Schedule 6.02(a)(ix), § 5.

20.     Under the SMIP, each Plaintiff was eligible to earn, among other things, awards in the form of (i) an "Annual Bonus Amount," which would be determined by (x) the bonus percentage for the Participant, as set forth in each participant's individual award agreement,

multiplied by (y) the Annual Bonus Pool (as defined in the SMIP) for each Performance Period – i.e., for calendar years 2015, 2016, and 2017, and (ii) an annual "Aggregate Overachievement Amount" upon the achievement of certain performance metrics specified in Appendix A of the SMIP. SMIP, §§ 1.3, 2.3, 2.4, 2.10, 2.20.

21.     The SMIP provided that half of the annual award granted to the Participants was to be paid in cash in a single lump sum and half was to be delivered to the Participants in the form of RSUs for TerraForm Power, Inc. Class A Common Stock. SMIP, § 4.2.

22.     The number of RSUs to be awarded for a given year was determined by dividing the amount payable by the closing price of a share of TerraForm Power Inc. Class A Common Stock on the day immediately preceding the grant of the award. SMIP, § 4.2.

23.     In practice, however, SUNE and the Participants agreed that SUNE would satisfy its RSU obligations by awarding half RSUs for SunEdison Inc. Class A Common Stock and half RSUs for TerraForm Power Inc. Class A Common Stock, each in a number of units that reflected the respective stock's closing price on the day before the award.

24.     The SMIP provides that a Participant remains eligible to receive these awards notwithstanding terminating his or her employment services, if the termination was "by the Participant for Good Reason" (as defined in the PSA) (a "Qualifying Termination"). SMIP, § 3.2.

25.     The SMIP further provides that upon a Qualifying Termination, a Participant shall receive "(x) the Annual Bonus Amount for such Participant for any completed prior Performance Period (based upon actual performance) and (y) a pro rata bonus (based on the number of days employed during the Performance Period relative to 365 days) for the then current Performance Year (based on actual performance)." SMIP, § 3.2.

26.     The SMIP further provides that in the event of a Qualifying Termination, all outstanding RSUs are immediately and fully vested.  SMIP, § 3.2.

27.     The Award Agreements provided for by the SMIP require TerraForm Power, Inc. in the event of a Qualifying Termination to deliver stock to Participants corresponding to their vested RSUs within thirty days after a Qualifying Termination.

**Events Prior to Plaintiffs' Resignations for Good Reason**

28.     SunEdison Inc. and certain of its affiliates were in a state of financial distress in January 2016 and thereafter.

29.     In January and February 2016, Plaintiff Alvarez frequently corresponded with SUNE executives, including Stephen Cerrone, Executive Vice President and Chief Human Resources Officer, about the annual bonuses for 2015 that the Governing Documents required to be paid to the Participants by March 15, 2016.

30.     Alvarez provided Cerrone with details supporting an aggregate 2015 Achievement and Overachievement Bonus of $6,295,362 due to the Participants under the SMIP.

31.     Cerrone acknowledged to Plaintiffs Alvarez and Keel and others that there was "no debate or ambiguity re the $3.663 for achievement" – meaning that the Participants were undisputedly entitled to an Annual Bonus with an aggregate cash component of $3,663,095 (the "Undisputed 2015 Bonus").

32.     Cerrone later proposed, and Alvarez agreed to, "locking up the 3.663 million (2015 target paytou) [sic] while we discuss and agree re the over-achievement."

33.     Cerrone later confirmed to Alvarez that "the plan is to pay out at 'achievement' level (I.e., target) [i.e., the Undisputed 2015 Bonus] for 2015," but that, as a result of SunEdison's

"liquidity position," it would "likely pay it a bit later than [March] 15th but it will be paid soon
.... we plan to pay the '15 SMIP shortly."

34.     The March 15 deadline passed without SUNE making any payments under the
SMIP.

35.     The next day, Cerrone informed Alvarez and Keel, among other Participants, that
the 2015 bonus payments would be made "[a]s soon as there are funds available for payment. It?s
[*sic*] really a finance/funding issue at this point and I think everyone is aware of the liquidity issues
in the Company."

36.     As of March 16, 2016, SUNE had admitted that (i) it was obligated to pay the
Participants at least the 2015 Undisputed Bonus by March 15, 2016 and (ii) it had not paid any
bonuses by the March 15, 2016 deadline only because it did not have sufficient funds to do so.

**Claimants' Resignations for Good Reason**

37.     On or about March 16, 2016, each Plaintiff delivered a letter to SUNE providing
notification of Good Reason for termination of his services, namely, SUNE's breach of its
obligation to pay, at a minimum, the full bonus consideration due for the 2015 performance period
on or before March 15, 2016.  As required by the SMIP, each letter noted that SunEdison would
have thirty days to cure this breach.

38.     On March 19, 2016, a SUNE in-house counsel, Stephanie Russell, acknowledged
receipt of these letters and stated in an email that SUNE would respond to the letters "after
reviewing [them] in light of the SMIP."

39.     On or about April 12, 2016, SUNE delivered RSUs for SunEdison Inc. and
TerraForm Inc. Class A Common Stock to each Plaintiff corresponding to a portion of the 2015
Undisputed Bonus.

40.    SUNE did not provide any Plaintiff the cash payment that comprised the remainder of the 2015 Undisputed Bonus.

41.    SunEdison did not provide any Plaintiff with any consideration based on the 2015 Overachievement Bonus.

42.    On or about April 16, 2016, each Claimant delivered a second letter to SUNE, providing notice that, that due to SUNE's failure to cure the breach under the SMIP, he was terminating his employment, effective immediately, for Good Reason.

43.    The PSA defines "Good Reason" for resignation to include resignation based on a "material breach . . . under any applicable employment agreement and material employee benefit plan or compensation arrangement." PSA, p. 14; *see* SMIP § 2.17.

44.    The cash portion of the 2015 Undisputed Bonus that was payable by March 15, 2016 but was never paid to each Plaintiff was in the hundreds of thousands of dollars.

45.    SunEdison's failure to pay Plaintiffs the full consideration payable to them based on the 2015 Undisputed Amount, not to mention the 2015 Overachievement Bonus that SunEdison never specifically disputed, constituted a material breach of SunEdison's obligations under the PSA and SMIP.

46.    Each Plaintiff's resignation was for "Good Reason" as defined in the PSA.

47.    Each Plaintiff's resignation was a "Qualifying Termination" as defined in the SMIP, which (as noted above) defines that term by reference to "Good Reason" under the PSA. PSA, p. 14; §§ 2.04-2.06; SMIP § 3.2.

48.    Each Plaintiff fully complied with the elements of a resignation for Good Reason under the SMIP and a Qualifying Termination under the PSA.

**Events After the Claimants' Resignations for Good Reason**

49.     On April 21, 2016, SunEdison and twenty-five affiliates, including NVT, LLC, filed petitions for relief under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for the Southern District of New York.

50.     Defendants did not at any time file a chapter 11 petition.

51.     Under the Governing Documents, including the Award Agreements, Defendants were obligated to deliver to Plaintiffs TerraForm Power, Inc. Class A Common Stock corresponding to their vested RSUs within thirty days after the immediate vesting of the RSUs pursuant to a resignation for Good Reason.

52.     Upon Plaintiff Alvarez's resignation for Good Reason, he held vested RSUs for 35,056 shares of TerraForm Power, Inc. Class A Common Stock.

53.     Upon Plaintiff Keel's resignation for Good Reason, he held vested RSUs for 37,569 shares of TerraForm Power, Inc. Class A Common Stock.

54.     Upon Plaintiff Spiliotis's resignation for Good Reason, he held vested RSUs for 31,660 shares of TerraForm Power, Inc. Class A Common Stock.

55.     Defendants never delivered any TerraForm Power, Inc. Class A Common Stock to any Plaintiff following his resignation for Good Reason.

56.     By failing to deliver any TerraForm Power, Inc. Class A Common Stock to any Plaintiff following his resignation for Good Reason, Defendants breached their contractual obligations to Plaintiffs.

57.     The SMIP provides that each Plaintiff is entitled to recover his attorneys' fees and expenses in pursuing his rights under the Governing Documents through arbitration or litigation arising therefrom. *See* SMIP § 6.7.

9

### FIRST CAUSE OF ACTION
**Breach of Contract**

58.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 57 above as if fully set forth herein.

59.     The Governing Documents, including the Award Agreements, are valid contracts between Plaintiffs and various constituents of SUNE, including Defendants.

60.     Plaintiffs duly performed all obligations required of them pursuant to the Governing Documents.

61.     By not delivering to Plaintiffs by May 16, 2016 (or thereafter) all TerraForm Inc. stock related to RSUs vested in Plaintiffs as of April 16, 2016, TerraForm Inc. and/or TerraForm LLC breached one or more of the Governing Documents.

62.     As a result of the foregoing breach, each Plaintiff has been damaged to the extent of the market value of the Undelivered Stock that should have been delivered to him, in amounts to be proven at trial but no less than $316,205.12 as to Alvarez, $338,872.38 as to Keel, and $285,573.20 as to Spiliotis.

### SECOND CAUSE OF ACTION
**In the Alternative:  Promissory Estoppel**

63.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 62 above as if fully set forth herein.

64.     Plaintiffs would not have agreed to work for SUNE but for their reliance upon SUNE's promise to provide them a compensation package that included RSUs and, upon the RSUs vesting, SunEdison and TerraForm Inc. stock, which SunEdison and Defendants promised to deliver if the applicable conditions were met.

65.     TerraForm Inc. and/or TerraForm LLC broke this promise by not delivering the TerraForm Inc. stock that corresponded to Plaintiffs' vested RSUs after Plaintiffs' resignations for Good Reason.

66.     As a result of this broken promise, each Plaintiff has suffered damages.

67.     In the event that there is no enforceable contract between Plaintiffs and Defendants, each Plaintiff should be entitled to recover from Defendants, on grounds of promissory estoppel, the market value of the Undelivered Stock that should have been delivered to him, in amounts to be proven at trial but no less than $316,205.12 as to Alvarez, $338,872.38 as to Keel, and $285,573.20 as to Spiliotis.

### THIRD CAUSE OF ACTION
### In the Alternative:  Unjust Enrichment

68.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 67 above as if fully set forth herein.

69.     The services performed by Plaintiffs during their employment by SUNE provided material benefits to Defendants.

70.     Plaintiffs have not been justly compensated for those services, as a result of Defendants failing to deliver to Plaintiffs the TerraForm Inc. stock that was a component of Plaintiffs' agreed compensation.

71.     Defendants would be unjustly enriched if they were to retain the benefits of Plaintiffs' services and also retain the TerraForm Inc. stock to which Plaintiffs were justly entitled.

72.     In the event that there is no enforceable contract between Plaintiffs and Defendants, in equity and good conscience, Defendants should provide restitution to each Plaintiff in amount equal to the extent of the market value of the Undelivered Stock that should

have been delivered to him, in amounts to be proven at trial but no less than $316,205.12 as to Alvarez, $338,872.38 as to Keel, and $285,573.20 as to Spiliotis.

72.     WHEREFORE, Plaintiffs Alvarez, Keel and Spiliotis respectfully request that this Court grant them the following relief:

 i. on the First Cause of Action, money damages in amounts to be proven at trial but no less than $316,205.12 as to Alvarez, $338,872.38 as to Keel, and $285,573.20 as to Spiliotis;

 ii. on the Second Cause of Action, restitution in amounts to be proven at trial;

 iii. on the Third Cause of Action, restitution in amounts to be proven at trial;

 iv. attorneys' fees and other expenses incurred in pursuing this action; and

 v. such other and further relief as this Court deems just and proper.

*     *     *

## DEMAND FOR JURY TRIAL

Plaintiffs request trial by jury as to all issues so triable.

Dated:   May 15, 2019

By:     _Elise Att_____

. Elise M. Attridge
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, D.C. 20004
(T) 202-739-5704
(F) 202-739-3001
elise.attridge@morganlewis.com

Joshua Dorchak (*pro hac vice* motion forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(T) 212-309-6700
(F) 212-309-6001

2019 MAY 15 PM 3: 57
FILED
CLERK OF COURT
CLERK'S OFFICE
MONTGOMERY CO. MD.

joshua.dorchak@morganlewis.com

*Attorneys for Plaintiffs, Michael U. Alvarez,*
*Peter J. Keel, and Charles P. Spiliotis*

## RULE 1-313 CERTIFICATION

Undersigned counsel hereby certifies pursuant to Maryland Rule 1-313 that she is

admitted to practice law in Maryland and is a member in good standing of the bar of this Court.

Elise M. Attridge

2019 MAY 15  PM 3: 57
FILED
CLERK OF COURT
CLERK'S OFFICE
MONTGOMERY CO. MD.

13